# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL GENE TERRELONGE, | |
| Petitioner, | NO. 3:17-CV-2356 |
| v. | (JUDGE CAPUTO) |
| WARDEN L.J. ODDO, | |
| Resondent. | |

## **MEMORANDUM**

Presently before me is the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) filed by Petitioner Michael Gene Terrelonge ("Petitioner"). In his petition, Petitioner raises several claims relating to the Bureau of Prisons' ("BOP") Inmate Financial Responsibility Program ("IFRP"). For the reasons that follow, the petition will be denied.

## **I. Background**

Petitioner, an inmate at the United States Penitentiary ("USP") Allenwood, was convicted in the United States District Court for the Western District of North Carolina of armed bank robbery and related offenses and sentenced to a 744 month term of imprisonment. (*See* Doc. 1, ¶ 4; Doc. 8, Ex. "1", ¶ 2 & Attach. "C"). Petitioner was assessed $700.00 and ordered to pay $16,875.00 in restitution. (*See id*. at Doc. 8, Ex. "1", Attach. "C"). The "Schedule of Payments" portion of Petitioner's criminal Judgment provides:

> Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:
>
> . . .
>
> B   X   Payment to begin immediately . . . combined with . . .
>
> D   X   Payment in equal Monthly installments of $50.00. To commence 60 days after release from imprisonment to a term of supervision. In the event the entire amount of criminal

> monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. Probation Officer shall pursue collection of the amount due, and may request the court to establish or modify a payment schedule if appropriate 18 U.S.C. § 3572.
>
> . . .
>
> Special instructions regarding the payment of criminal monetary penalties:
>
> _     The defendant shall pay the cost of prosecution.
>
> _     The defendant shall pay the following court costs:
>
> X     The defendant shall forfeit the defendant's interest in the following property to the United States: any interest in any property seized during the course of this investigation.
>
> Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States District Court Clerk , 401 West Trade Street, Room 210, Charlotte, NC 28202, except those payment made through the Bureau of Prisons' Inmate Financial Responsibility Program. All criminal monetary penalty payments are to be made as directed by the court.

(*Id*.).

On October 4, 2016 and July 5, 2017, Petitioner agreed to participate in the IFRP. (*See* Doc. 8, Ex. "1,", ¶ 4 & Attach. "D"). Petitioner, however, was placed on refuse status in September 2017 for having insufficient funds to make the agreed upon payment. (*See id*. at Ex. "1", ¶ 5).

Petitioner filed the instant petition pursuant to 28 U.S.C. § 2241 on December 21, 2017 challenging the Inmate Financial Responsibility Program ("IFRP"). (*See* Doc. 1, ¶ 5). Specifically, Petitioner raises the following challenges in the petition: (1) the IFRP is unconstitutional on its face because Congress never authorized the BOP to enact the regulation; (2) the IFRP is "unconstitutional as applied to the Bureau of Prisons Disciplinary regulation under the Due Process and Equal Protection Clause of the Fifth Amendment and Laws of the United States which both cannot coexist with

2

one another"; (3) the BOP did not have authority to set a scheduling payment amount without the approval of the sentencing court; and (4) the IFRP contract signed by Petitioner was based upon agency coersion and extortion. (*Id*. at ¶ 13). As relief, Petitioner requests that the IFRP be declared unconstitutional, that he be removed from refusal status, and that he be refunded all previous payment that have been taken from him. (*See id*. at ¶ 15).

Respondent timely opposed the petition. (*See* Doc. 8, *generally*). Respondent contends that the petition should be denied because the IFRP is lawful and because neither Petitioner's placement in IFRP refuse status nor the resulting consequences violate the Due Process Clause. (*See id*.).

Petitioner submitted a timely traverse. (*See* Doc. 10, *generally*). Therein, Petitioner repeats his grounds for relief, *i.e.*: (1) the IFRP is unconstitutional on its face and as-applied; (2) the IFRP and the prison disciplinary program conflict and cannot coexist with each other; (3) Respondent is acting outside the scope of his authority in setting a payment schedule that is inconsistent with the sentencing court's order; and (4) his IFRP contract is invalid since he was coerced into agreeing to its terms. (*See id*. at 2). With respect to the third issue raised by Petitioner, he argues that it is undisputed that Respondent and the BOP are "acting against and contrary to the sentencing court['s] judgment that direct[s] petitioner to start paying his financial responsibilities owed to the court upon his release from imprisonment, not under the ("I.F.R.P.") program." (*Id*. at 5).

## II. Discussion

Petitioner's petition is a challenge to the BOP's execution of his sentence and thus is properly brought pursuant to § 2241. *See McGee v. Martinez*, 627 F.3d 933, 936-37 (3d Cir. 2010).

The IFRP, Program Statement 5380.08, applies to most BOP inmates and requires the BOP to make an effort to collect court-ordered financial obligations. *See* 28 C.F.R. § 545.10. Under the program, inmates are encouraged to contribute to their

3

court-ordered financial obligations while incarcerated. (*See* Doc. 8, Ex. "2", 1). Failure to participate may result in the denial of the following privileges/opportunities: furlough (other than possibly an emergency or medical furlough); performance pay above the maintenance pay level regardless of work assignment; UNICOR employment; opportunities to work outside the prison; higher monthly commissary spending limits; higher level housing status; participation in community-based programs; and a release gratuity. *See* 28 C.F.R. § 545.11(d).

Petitioner's § 2241 petition will be denied. First, the Third Circuit has held that the IFRP is constitutional. *See Pinet v. Grondolsky*, 245 F. App'x 805, 806-07 (3d Cir. 2009); *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); *see also Duronio v. Gonzales*, 293 F. App'x 155, 157 (3d Cir .2008) ("While being in the 'IFRP Refuse' category denies a prisoner certain privileges, it does not result in the imposition of discipline that would trigger a constitutionally protected interest."); *Duronio v. Werlinger*, 454 F. App'x 71, 74 n.4 (3d Cir. 2011) ("Duronio 'ha[s] no entitlement, constitutional or otherwise, to any of the benefits agreeing to participate in the IFRP would provide, such as work detail outside the prison perimeter, a higher commissary spending limit, a release gratuity, or pay beyond the maintenance pay level."). The Third Circuit has also found that the IFRP was properly enacted in accordance with the Administrative Procedures Act. *See James*, 866 F.2d at 631. And Petitioner has not demonstrated that the IFRP conflicts with the BOP's inmate discipline program, 28 C.F.R. § 541.1. *Accord Duronio*, 293 F. App'x at 157 (inmate can refuse "to participate in the IFRP without fear of being disciplined by prison authorities.").

Second, Petitioner's claim that he was coerced into participating in the IFRP lacks merit. Numerous courts have made clear that participation in the IFRP is voluntary and lawful. *See, e.g.*, *United States v. Boyd*, 608 F.3d 331, 334 (7th Cir. 2010); *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); *Balter v. Martinez*, 477 F. App'x 873, 875 (3d Cir. 2012); *Griggs v. Zickenfoose*, No. 13-2342, 2014 WL 2042153, at *2 (M.D. Pa. May 19, 2014) ("In sum, Petitioner cannot claim duress

4

merely from being faced with the choice of either meeting his financial responsibilities or losing privileges associated with participation in the IFRP.").

Lastly, Petitioner contends that his criminal Judgment indicates that he is "not required to start his financial responsibility until after his release from imprisonment." (Doc. 10, 12). As quoted above, the "Schedule of Payments" states that payments are to be made in equal monthly installments "[t]o commence 60 days after release from imprisonment to a term of supervision." (Doc. 8, Ex. "1", Attach. "C"). While that sentence arguably supports Petitioner's position, when the Schedule of Payments is read in its entirety, it is clear that the sentencing court ordered that Petitioner's financial obligations began immediately and were not deferred until after he was released from prison.

In the Schedule of Payments, the sentencing court checked section B, requiring payment to being immediately, along with section D, setting monthly installment payments of $50.00 to begin 60 days after his release from prison. (Doc. 8, Ex. "1", Attach. "C"). Most importantly, the Schedule of Payments goes on to state that "[u]nless the court has expressly ordered otherwise in the special instructions[,]" "payment of criminal monetary penalties shall be due during the period of imprisonment" since the Judgement "impose[d] a period of imprisonment[.]" (*Id*.). The special instructions in the Schedule of Payments do not speak to whether payments were to be made during Petitioner's term of imprisonment, so it is apparent that the sentencing court did not expressly order that they were not to be made by Petitioner while he was incarcerated. (*See id*.). As one court of appeals has commented, "there is no necessary inconsistency between line D, the payment schedule following [Petitioner's] release, and the apparently standard paragraph requiring payments to be made during imprisonment 'unless expressly ordered otherwise.'" *Hickman v. Keffer*, 498 F. App'x 375, 378 (5th Cir. 2012). Other courts have agreed with this reading of the Schedule of Payments form. *See*, *e.g.*, *Carter v. Fed. Med. Ctr. Devens*, No. 16-11910, 2017 WL 3704566, at *1 (D. Mass. Aug. 28,

5

2017) ("Line D of the judgment merely specifies the frequency, duration, and amount of the payments to be made after Carter is released from prison; it says nothing about those being the sole payments for which he is responsible. No other aspect of the judgment "expressly orders" that Carter be relieved of his restitution obligations while he is incarcerated."); *Rashad v. Mosey*, No. 13-852, 2014 WL 7339058, at *3 (S.D. Miss. 2014) ("There is no inconsistency between the language setting forth a payment schedule following [the petitioner's] release and the language requiring payments to be made during imprisonment contained in the judgment."); *see also Humphries v. Ortiz*, No. 16-9552, 2018 WL 6075507, at *4-5 (D.N.J. Nov. 21, 2018). As such, Petitioner's payment obligations were not, in fact, deferred until his release from prison.

### III. Conclusion

For the above stated reasons, Petitioner's § 2241 petition will be denied.

An appropriate order follows.

October 24, 2019  /s/ A. Richard Caputo
Date   A. Richard Caputo
   United States District Judge